IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL EHAS,                    )
                                 )
            Plaintiff,           )
                                 )        Case No. 12 C 3537
      v.                         )
                                 )
LIFE INSURANCE COMPANY           )
OF NORTH AMERICA,                )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Michael Ehas filed suit against Defendant Life Insurance Company of North America ("LINA") under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") (R. 1, Compl. ¶ 4.) Plaintiff seeks to recover benefits allegedly due to him under a long-term disability employee benefits plan pursuant to 29 U.S.C. § 1132(a)(1)(B), and attorneys' fees pursuant to 29 U.S.C. § 1132(g). (*Id.*) Before proceeding to the merits of Plaintiff's claim, this Court must first determine the appropriate standard of review. For the following reasons, the Court holds that a de novo standard of review governs this case and denies Plaintiff's requests for discovery beyond the administrative record.

## BACKGROUND

### I.    Parties

Plaintiff Michael Ehas is a former employee of Underwriters Laboratories. (Compl. ¶ 8.) Defendant LINA is the "Claim Fiduciary" of an employee benefits long-term disability plan sponsored by Underwriters Laboratories from which Plaintiff seeks benefits. (Compl. ¶¶ 6,10;

R. 17, Pl.'s Mem. of Law, Ex. B.).

## II.    Procedural History

Plaintiff worked as a lead engineering associate for Underwriters Laboratories from May

23, 1983 until August 31, 2009.  (Compl. ¶ 8.)  After ceasing his employment with Underwriters

Laboratories, Plaintiff applied for and received short-term disability benefits under a group plan

sponsored by Underwriters Laboratories.  (*Id.* ¶ 10.)  Plaintiff then applied for long-term

disability benefits under a plan ("The Plan") funded by a group insurance policy issued by LINA

("The Policy").  (*Id.* ¶ 11.)  The LINA policy in the Plan became effective on January 1, 2004

with an annual "anniversary date" of January 1.  (Pl.'s Mem. of Law, Ex. A.)  LINA approved

Plaintiff's application for benefits beginning as of March 3, 2010.  (Compl. ¶ 11.)  On May 25,

2011, LINA notified Plaintiff that he was not eligible to receive benefits beyond May 2, 2011.

(*Id.*)  On May 9, 2012, Plaintiff filed the present action challenging LINA's decision to terminate

his benefits under 29 U.S.C. § 1132(a)(1)(B) of ERISA.  (Compl. ¶ 4.)  Pursuant to this Court's

August 21, 2012 order, the parties then submitted briefing on the appropriate standard of review

and scope of discovery.  (R. 16, Def.'s Mem. of Law; Pl.'s Mem. of Law; R. 24, Pl.'s Resp. to

Def.'s Mem. of Law; R. 25, Def.'s Resp. to Pl.'s Mem. of Law; R. 29, Pl.'s Sur-Reply to Def.'s

Resp.).

## LEGAL STANDARD

## I.    Judicial Review of ERISA Benefits Determinations

In ERISA cases, "'a denial of benefits . . . is to be reviewed under a de novo standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan,'" in which case a deferential standard

of review is appropriate." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 837 (7th Cir. 2012) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956, 103 L. Ed. 2d 80 (1989)). Put differently, de novo review requires courts to make an "independent decision" analogous to deciding "how the language of [a] contract applies to [the] facts." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009) (noting that the phrase "de novo review" is "misleading").

If, however, the plan provides the plan administrator or fiduciary with discretion to interpret the plan or determine eligibility, courts "review the administrator's decision under the deferential arbitrary and capricious standard." *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). "Under this least demanding form of judicial review, [courts] will not set aside a denial of benefits based on any reasonable interpretation of the plan." *Id.* (citations and internal quotation marks omitted).

## ANALYSIS

In deciding whether the plan gives the administrator or fiduciary discretion to award benefits, the Court looks to the plan's plain language. *Silvernail v. Ameritech Pension Plan*, 439 F.3d 355, 358 (7th Cir. 2006) ("[C]ourts should take care to interpret ERISA strictly according to its plain language."). A plan provision establishing discretion, however, "must be clear." *Schultz*, 670 F.3d at 837. In *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000), the Seventh Circuit set forth the following "safe harbor" that automatically provides the administrator with discretion: "[b]enefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." 205 F.3d at 331. Plans, however, need not contain the Seventh Circuit's proposed "safe harbor" or any "magic

3

words" to confer discretion. *Id.* A plan need only "indicate[ ] with the requisite if minimum clarity that a discretionary determination is envisaged." *Id.*

Moreover, "often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 448 (7th Cir. 2009) (citation omitted). Discretionary language, however, may not "exist in a vacuum" from the rest of the plan. *Raybourne*, 576 F.3d at 449.

## I.     The Plan Gives LINA Discretion to Interpret Plan Terms and to Determine Benefits Eligibility

To determine whether the Plan gives LINA discretion sufficient to trigger deferential review, the Court must consider three documents: (1) the Group Policy ("the Policy") (Pl.'s Mem. of Law, Ex. A.); (2) the Employee Welfare Benefit Plan Appointment of Claim Fiduciary ("ACF") (Pl.'s Mem of Law, Ex. B); (3) the Group Disability Insurance Certificate or "Summary Plan Description" as referred to by the parties ("SPD") (Pl.'s Mem. of Law, Ex. C.; Pl.'s Mem. of Law 2, Def.'s Mem. of Law 3.) The parties disagree as to whether the SPD and the ACF–which both contain discretionary language–can trigger deferential review. The Court will consider both documents in turn below.

The ACF identifies Underwriters Laboratories Compensation Committee as the "Plan Administrator" and appoints LINA, along with two other insurance companies, as the "Claim Fiduciary" or " designated fiduciary for the review of claims for benefits under [the Plan]." (Pl.'s Mem. of Law, Ex. B.) The ACF then states the following regarding the role of LINA as the Claim Fiduciary:

> Within the scope of this appointment, Claim Fiduciary shall be responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse claim determinations. Claim Fiduciary shall have the authority, in its discretion, to

> interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact. All decisions made by such Claim Fiduciary shall be final and binding on Participants and Beneficiaries of the Plan to the full extent permitted by law. (*Id.*)

The ACF also specifies that the "Plan Administrator shall include the foregoing in Summary Plan Descriptions furnished to Participants." (*Id.*)

Consistent with the ACF, the SPD states the following under the heading, "What You Should Do and Expect If You Have a Claim":

> The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

> (Pl.'s Mem. of Law, Ex. C, at 17.)

Despite the language of the ACF and the SPD, which both grant LINA as Claim Fiduciary the discretion to "interpret the terms of the Plan," "to decide questions of eligibility for coverage or benefits under the Plan," and "to make any related findings of fact," Plaintiff argues that these documents cannot trigger deferential review for several reasons.

First, Plaintiff contends that because the ACF neither formally amends nor was amended by the Policy, the Fiduciary Appointment does not trigger deferential review.[1] Plaintiff's

---

[1] Given that Plaintiff argues only in his brief that an "undisclosed 'officer'" of LINA signed the ACF (Pl.'s Mem. of Law 3-4) but does not allege so in his Complaint, this Court does not credit the assertion that the LINA signatory to the ACF also lacked the authority to amend the policy. Moreover, in *Raybourne*, the district court found at summary judgment that a similar appointment of claim fiduciary document amended the plan by virtue of "appointing the [administrator] as the claim fiduciary" and granting it "the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." *See Raybourne v. Cigna Life Ins.*, 07 C 3205, 2008 WL 2782924, at *3 (N.D. Ill. June 24, 2008), *vacated and remanded on*

argument, however, is unpersuasive in light of *Raybourne v. Cigna Life Ins. Co.*, 576 F.3d 444 (7th Cir. 2009). In *Raybourne*, the Seventh Circuit did not require the formal amendment of a claim fiduciary agreement in order for it to trigger deferential review. Although the claim fiduciary agreement in *Raybourne* was "neither incorporated nor referenced anywhere in the plan," and the Plaintiff did not receive it until litigation, the claim fiduciary agreement was a plan document that did not "exist in a vacuum" because it "provide[d] the name of the plan and the plan administrator, [was] signed by representatives of the plan and [the insurance company], and state[d] that it 'shall be effective' from the date of the underlying insurance policy." *Raybourne*, 576 F.3d at 448-49. The *Raybourne* court also noted that "the language of the Claim Fiduciary Agreement explains why [the plaintiff] did not receive it" because (1) the Claim Fiduciary Agreement required the plan administrator "to describe its discretion 'in Summary Plan Descriptions furnished to Participants'" and (2) "[t]he SPD–which describes the plan's grant of discretion . . . explains that the 'actual provisions of the Plan are set forth in the insurance policy and the claims fiduciary agreement.'" *Id.* at 448.

Similarly, like the Claim Fiduciary Agreement in *Raybourne*, the ACF does not "exist in a vacuum." It directs the reader to the SPD and contains almost identical language in describing the discretion of the Claim Fiduciary. ((*See* Pl.'s Mem. of Law, Ex. B.) ("Plan Administrator shall include the foregoing [description of discretion] in Summary Plan Descriptions furnished to Participants.");(Pl.'s Mem. of Law, Ex. C, at 17.)) The SPD, in turn, directs back to the policy (Pl.'s Mem. of Law, Ex C. (unnumbered page) (stating it is not the "insurance contract" and "does not waive or alter any of the terms of the Policy")). Here, too, as in *Raybourne*, the

_____

*other grounds*, 576 F.3d 444 (7th Cir. 2009) (internal quotation marks omitted).

6

representatives of both the Plan Administrator and the Claim Fiduciary signed the ACF, and the

ACF states the names of both the Plan and Plan Administrator and is "effective from and after

the effective dates of each of the [p]olicies."  (Pl.'s Mem. of Law, Ex. B.)

Second, plaintiff's reliance upon *Schwartz v. Prudential Ins. Co. of America*, 450 F.3d

697 (7th Cir. 2006) is also misplaced because there the discretionary language appeared only in

the SPD, and the SPD conflicted with the policy.  *See* 450 F.3d at 699.  The Seventh Circuit

reasoned that because "the plan" is "more complete" than the SPD, when the two conflict, the

plan will govern, unless the insured has detrimentally relied on the SPD.  *Schwartz*, 450 F.3d at

699 (noting the SPD merely "excerpts and translates [the language of the plan]" so that the plan

may be "intelligible to lay persons") (quoting *Health Cost Controls of Ill., Inc. v. Washington*,

187 F.3d 703, 711 (7th Cir. 1999)).  Moreover, the Seventh Circuit affirmed this reasoning in

*Raybourne*.  *See* 576 F.3d at 449 ("[A] grant of discretion that appears in an SPD but not the

underlying plan is insufficient to warrant deferential review because an SPD–which is meant to

be a plain language version of the underlying plan–may not confer rights that the plan itself does

not.").  The key distinction between the present case and *Schwartz* is that both the ACF and the

SPD contain discretionary language, and these documents serve different purposes.  As the

Seventh Circuit noted in *Raybourne*, the ACF, unlike the SPD, may do more than merely

summarize and explain the terms of the plan.  *See* 576 F.3d at 448 (noting that the Claim

Fiduciary Appointment "modifie[d] the terms of the underlying plan" and that "it is appropriate

to review trust documents 'in search for a reservation of discretion'" (quoting *Cagle v. Bruner*,

112 F.3d 1510, 1517 (11th Cir. 1997)).

Plaintiff argues that *Raybourne* is "questionable" precedent following the Supreme Court's decision in *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 179 L. Ed. 2d 843, because, according to Plaintiff, *Amara* held that "extrinsic documents may not alter plan terms." (Pl.'s Mem. of Law 5.) The Court, however, disagrees with Plaintiff's broad characterization of *Amara*'s holding, which addressed significantly different factual and legal issues from those currently before the Court. In *Amara*, the plaintiffs, beneficiaries under a pension plan governed by ERISA, challenged a new plan adopted by their employer on the ground that they received insufficient notice of the new plan's changes, which provided less generous benefits. *Amara*, 131 S. Ct. at 1870. After finding the defendant CIGNA "told its employees nothing about any of [certain] features of the new plan" and "intentionally misled its employees" in violation of various ERISA provisions, the district court reformed the new plan's guarantee of benefits provision so that employees would earn both "that which they had already earned . . . under the old plan" plus "that which they would earn via . . . the new plan, excluding CIGNA's initial deposit." *Id.* at 1875. The issue before the Supreme Court in *Amara* was whether either § 502(a)(1)(B) or § 502(a)(3) of ERISA permitted the district court to reform the terms of the plan in such a manner. The Solicitor General argued that the district court had "enforced" rather than "reformed" the terms of the plan because the "'plan' includes the disclosures that constituted the summary plan descriptions." *Id.* at 1877 ("In other words, in the view of the Solicitor General, the terms of the summaries are terms of the plan."). In rejecting the Solicitor General's argument, the Supreme Court reasoned that treating the terms of the summary plan descriptions as the same as the terms of the plan itself was at odds with ERISA's objectives, including that summary plan descriptions avoid "the language of lawyers" in favor of "simplicity and

comprehensibility." *Id.* at 1878. For these reasons, the Supreme Court concluded that "that the summary documents, important as they are, provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." *Id.* Although *Amara* made clear that the terms of an SPD are not synonymous with the terms of the plan, Plaintiff goes too far in arguing that this conclusion–which the Court made in the context of addressing the larger issue of the propriety of the district court's remedy under ERISA–is at odds with *Raybourne*. *Raybourne* was concerned with which plan language and plan documents can give discretion sufficient to trigger a deferential standard of review, not with which document provides the definitive terms of the plan for the purposes of determining whether a court has acted within its authority under ERISA to enforce or reform the plan. Moreover, *Raybourne*'s acknowledgment that the SPD is "meant to be a plain language version of the underlying plan" and "may not confer rights that the plan itself does not" is entirely consistent with *Amara*. *Raybourne*, 576 F.3d at 449. Thus, the ACF and SPD contain discretionary language with the "requisite if minimum clarity" to trigger deferential review.

## II.     Effect of Section 2001.3 of Title 50 of the Illinois Administrative Code on the Standard of Review

Previously, the conclusion that the Plan contains discretionary language triggering deferential review would have ended the standard of review inquiry. Plaintiff, however, argues that Section 2001.3 of Title 50 of the Illinois Administrative Code, which prohibits discretionary clauses in insurance contracts and related documents, strips the plan of its discretion-conferring language and thus triggers de novo review. Although the Seventh Circuit has yet to interpret Section 2001.3 in the context of ERISA, Plaintiff's view is consistent with the holdings of courts in this District. *See, e.g.*, *Zuckerman v. United of Omaha Ins. Co.*, No. 09 C 04810, 2012 WL

3903780, at *2 (N.D. Ill. Sept. 6, 2012) (Tharp, J.) (acknowledging that if Section 2001.3 displaces the discretion-conferring language, de novo review applies); *Barrett v. Life Ins. Co. of N. Am.*, No. 11 C 6000, 2012 WL 3544839, at *3 (N.D. Ill. Aug. 16, 2012 ) (Shadur, J.) (assuming that if the discretionary clause lost force, review would be de novo); *Curtis v. Hartford Life & Accident Ins. Co.*, No. 11 C 2448, 2012 WL 138608, at *10 (N.D. Ill. Jan. 18, 2012) (Gilbert, J.) (concluding Section 2001.3 invalidated the discretionary clause in a policy governed by ERISA and required de novo review); *Ball v. Standard Ins. Co*, No. 09 C 3668, 2011 WL 759952, at *2 (N.D. Ill. Feb. 23, 2011) (Keys, J.) (relying on the proposition that if "§ 2001.3 invalidates the plan's grant of authority . . . the Court should conduct a *de novo* review").

The Court agrees with the holdings of these courts that if Section 2001.3 applies, it strips the policy of its discretion-conferring language, and the standard of review reverts to de novo. In response, LINA offers two arguments as to why Section 2001.3 does not apply to the present case: (1) Section 2001.3 applies only to "policies and contracts of insurance" not to "trust agreements" such as the ACF; and (2) even if Section 2001.3 does apply to the ACF, ERISA preempts the regulation. (Def.'s Resp. to Pl.'s Mem. of Law 5-6.) The Court considers each argument in turn below.

## A.       Section 2001.3 Applies to the ACF

LINA argues that Section 2001.3 does not apply to the Plan because the ACF is a "trust agreement" and a "plan document[] that an employer executes to establish a benefit plan" rather than an insurance contract or policy. (Def.'s Resp. to Pl.'s Mem. 5-6.) The Court finds this argument unpersuasive, however, for several reasons.

Section 2001.3, which became effective on July 1, 2005,[2] 29 Ill. Reg. 10172,[3] states:

No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State. 50 Ill. Admin. Code § 2001.3 (2010).

In interpreting Section 2001.3, the Court applies canons of statutory construction and begins with the regulation's plain meaning. *See Emergency Servs. Billing Corp., Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012) ("When interpreting any statute, we begin with the statutory language itself and assume that the plain meaning, if easily ascertained, adequately expresses the intent of the legislature."); *Ill. Dep't of Revenue v. Envirodyne Indus., Inc.*, No. 06 C 4272, 2006 WL 3147696, at *6 (N.D. Ill. Oct. 31, 2006) (applying plain language canon to Illinois administrative regulation). Administrative guidance on the meaning of the regulation is also entitled to "some deference." *See Garvey*, 2011 WL 1103834, at *3 (("[S]ome deference is owed an agency's interpretation of a regulation when the interpretation rests on the agency's 'experience and expertise.'") (citing *Dusthimer v. Bd. of Trs. of Univ. of Ill.*, 368 Ill. App. 3d 159,165, 306 Ill. Dec. 250, 257, 857 N.E.2d 343, 350 (Ill. App. Ct. 2006)).

------

[2]Although the LINA policy was issued in 2004, and the regulation became effective in 2005, LINA does not argue that the regulation is inapplicable to the policy on this ground. Plaintiff asserts that each anniversary date constituted a renewal of the policy under Illinois law, and Defendant does not challenge this contention. (Pl.'s Mem. of Law 8.) This conclusion is also consistent with authority in this District that the regulation applies at least to "plans *issued or renewed* after July 1, 2005" if not to plans issued before then. *See Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, No. 08 C 1093, 2011 WL 1103834, at *2 (N.D. Ill. Mar. 25, 2011) (collecting cases); *Golden v. Guardian Life Ins. Co.*, No. 09 C 865, 2010 WL 3951508, at *2 (N.D. Ill. Oct. 4, 2010) (Norgle, J.) (suggesting applicability of Section 2001.3 to plans issued or renewed after the effective date). Thus, the Court assumes for the purposes of this Order that Section 2001.3 is not inapplicable to the policy on this ground.

First, Defendant's interpretation of Section 2001.3 as inapplicable to trust documents is contrary to the plain language of the regulation. The regulation sweeps broadly, including not only an insurance "policy," but a "contract, certificate, endorsement, rider application or agreement." 50 Ill. Admin. Code § 2001.3. Second, this argument is also at odds with the "common sense perspective" used by at least one other district court in interpreting other terms of the regulation. *Curtis*, 2012 WL 138608, at *7 (rejecting the defendant's argument that an insurance policy was not "offered" to an employer by an insurance company within the meaning of Section 2001.3 where the employer received and paid for employee benefits indirectly through a group trust that contracted with the insurance company). Likewise, to construe the broad phrasing of the regulation as not including an appointment of a claim fiduciary would similarly "elevate[] form over substance." *Id.*

Moreover, Defendant's interpretation of the regulation conflicts with that of Illinois' administrative agencies, which other courts in this district have found persuasive in interpreting the regulation. *See, e.g.*, *Zuckerman*, 2012 WL 3903780, at *5; *Garvey*, 2011 WL 1103834, at *2. A July 15, 2005 Illinois Department of Financial and Professional Regulation Notice of Adopted Amendments ("Illinois Notice") provides that the purpose of Section 2001.3 is to "prohibit all such policies from containing language reserving the sole discretion to interpret policy provisions with the insurer." 29 Ill. Reg. 10172. Significantly, the Illinois Notice also states the following: "The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard." 29 Ill. Reg. 10172. The Illinois

12

Notice shows the regulation unequivocally targets discretionary clauses, whose "legal effect," is

to "change the standard for judicial review . . . from one of reasonableness to arbitrary and

capricious." 29 Ill. Reg. 10172.

Leaving aside the ACF, Defendant's argument that the regulation does not apply also

fails to account for the fact that the almost identical discretion-conferring language also appears

in the SPD (Pl.'s Mem. of Law, Ex. C.). Since the SPD by its nature is but a "plain language

version of the underlying plan," *Raybourne*, 576 F.3d at 449, it falls within the regulation's

application to a "policy, contract, certificate, endorsement, rider application or agreement." 50

Ill. Admin. Code § 2001.3.

Thus, Section 2001.3 is applicable to the present case.

### B.     ERISA Does Not Preempt Section 2001.3

Next, LINA argues that even if Section 2001.3 applies to the discretionary clauses in

question, ERISA preempts the regulation. In response, Plaintiff contends that ERISA does not

preempt Section 2001.3 because it falls within ERISA's "savings clause" as a state provision that

"regulates insurance." *See* 29 U.S.C. § 1144(b)(2)(A).

ERISA comprehensively regulates employee welfare benefit plans that "provide

'medical, surgical, or hospital care or benefits' for plan participants or their beneficiaries

'through the purchase of insurance or otherwise.'" *N.Y. State Conference of Blue Cross & Blue

Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 650-51, 115 S. Ct. 1671, 1674, 131 L. Ed. 2d

695 (1995) (quoting 29 U.S.C. § 1002(1)). With respect to preemption, ERISA expressly

"supercede[s] any and all State laws so far as they may now or hereafter relate to any employee

13

benefit plan." 29 U.S.C. § 1144(a).[3] ERISA's "savings clause," however, excludes from preemption, "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

To "regulat[e] insurance," within the meaning of § 1144(b)(2)(A), a state law[4] must both (1) "be specifically directed toward entities engaged in insurance" and (2) "substantially affect the risk pooling arrangement between the insurer and the insured." *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342, 123 S. Ct. 1471, 1479, 155 L. Ed. 2d 468 (2003). In *Ky. Ass'n of Health Plans, Inc. v. Miller*, the Supreme Court clarified that a law may "be specifically directed toward . . . insurance," and still affect entities other than insurance companies. *See id.* at 336 ("Regulations 'directed toward' certain entities will almost always disable other entities from doing, with the regulated entities, what the regulations forbid; this does not suffice to place such regulation outside the scope of ERISA's saving clause."). Conversely, ERISA's savings clause applies to "laws that regulate *insurance*, not insurers." *Id.* at 334 (clarifying that "insurers must be regulated 'with respect to their insurance practices'" (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366, 122 S. Ct. 2151, 2159, 153 L. Ed. 2d 375 (2002)).

---

[3]Under the ERISA preemption analysis, courts also typically address whether the state law "relates to" an ERISA plan, which requires that the state law either have a "connection with" or make "reference to" such plans. *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 564 (7th Cir. 2002) (quoting *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 324, 117 S. Ct. 832, 837, 136 L. Ed. 2d 791 (1997) (citations omitted)). Given that Defendant fails to distinguish this aspect of the preemption analysis from its other general preemption arguments in its briefs, however, the Court will not address it here.

[4] Because validly promulgated regulations have the force of law, this Court assumes without deciding that section 2001.3 is validly promulgated and thus equivalent to a statute for purposes of the preemption analysis.

With respect to the second requirement, a state law must not only target insurance companies but "substantially affect the risk pooling arrangement between the insurer and the insured." *See id.* at 338. "'Otherwise, any state law aimed at insurance companies could be deemed a law that 'regulates insurance . . . .'" *Id.* at 338 (noting that a state law may be a "prerequisite to engaging in the business of insurance" and not "substantially affect the risk pooling arrangement between insurer and insured"). A state law, however, need not "alter or control the actual terms of insurance policies." *Id.* at 338. Rather, this requirement is met if the law "alter[s] the scope of permissible bargains between insurers and insureds." *Id.* at 338-39.

LINA offers several arguments as to why ERISA preempts section 2001.3, none of which squarely engage with *Miller*'s two-part test for determining whether the law "regulates insurance."

First, LINA argues that even if section 2001.3 "regulates insurance" within the meaning of ERISA's savings clause, ERISA preempts the regulation because it "provides a separate vehicle to assert a claim for benefits outside of ERISA," (Def.'s Resp. to Pl's Mem. of Law 8), in conflict with the Supreme Court's decision in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004), which recognized that Congress intended ERISA's civil enforcement scheme to be exclusive. *See* 542 U.S. at 208-09. *Davila*, however, addressed the issue of whether ERISA preempted a plaintiff's state law cause of action. *See* 124 S. Ct. at 2493. Here, Plaintiff does not make a state law claim–rather he makes a federal claim under ERISA and relies upon a state law in the course of arguing a threshhold issue to deciding that claim. (Compl. ¶¶ 1,4.). Thus, *Davila* is inapposite.

Second, Defendant contends that ERISA must preempt Section 2001.3 because otherwise, different standards of review of employee benefit plans would apply to employees in different states.  (*See* Def.'s Resp. to Pl.'s Mem. of Law 7.) ("[E]mployees in Illinois would have their claims reviewed *de novo*, while employees in other states would have their claims reviewed for abuse of discretion.").  Such variation, according to LINA, would "thwart ERISA's goal of establishing uniform, nationwide regulation of employee benefit plans."  (*Id.* at 7.)  In *Rush Prudential*, however, the Supreme Court clarified that ERISA is concerned with providing a forum for judicial review and not a particular standard of review:  "ERISA itself says nothing about a standard.  It simply requires plans to afford a beneficiary some mechanism for internal review of a benefit denial and provides a right to a subsequent judicial forum for a claim to recover benefits.  Although certain "discretionary" plan interpretations may receive deference from a reviewing court, *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80, nothing in ERISA requires that medical necessity decisions be "discretionary" in the first place."  *Rush Prudential*, 536 U.S. at 357.  As such, Defendant's argument fails.

Third, Defendant argues that ERISA preempts Section 2001.3 because the discretionary language invalidated by the regulation appears in the ACF, which is a "trust document."  (Def.'s Resp. to Pl.'s Mem. Law 8.)  This argument conflicts with the Supreme Court's "common sense" approach to the "regulating insurance" inquiry and its clarification that the inquiry is concerned with laws regulating "insurance" not insurers.  *Miller*, 538 U.S. at 334.  As the plain language of the ACF makes clear, Underwriters Laboratories (Plaintiff's former employer) executed the ACF appointing LINA among others "Claim Fiduciary" with the responsibility for "review of claims

16

for benefits under the Plan . . . to the extent that such benefits are funded by policies of *insurance* issued by such companies." (Pl.'s Mem. of Law, Ex. B.) Indeed, the ACF specifies that LINA has no other authority except "with respect to the administration of the Plan." (*Id.*) Reading the ACF as a whole, it is clear that LINA's involvement with the Plan is to handle claims for insurance benefits. Moreover, it is no surprise that ERISA's savings clause should preserve state laws regulating insurance that incidentally affect trust documents, since ERISA draws on the law of trusts. *Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 729 (7th Cir. 2012) (noting that principles of trust law supply the *Firestone* presumption of independent judicial decision making). LINA, therefore, cannot escape the reach of ERISA's savings clause merely by claiming that the ACF is a trust document.

Having rejected Defendant's arguments in favor of preemption, the Court will analyze Section 2001.3 under the *Miller* test. With respect to the first element, Section 2001.3 is "specifically directed to entities engaged in insurance." The plain language of the regulation prohibits clauses purporting to reserve discretion in policies and other documents offered by "health carriers . . . to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability." 50 Ill. Admin. Code § 2001.3. Although the regulation does not use the word "insurance," the language describing policies that provide payment or reimbursement for healthcare or disability costs collectively is directed toward this activity. Applying the Supreme Court's "common sense" approach in determining whether a law is "specifically directed toward entities engaged in insurance," Section 2001.3 satisfies this requirement. Moreover, although a law need not alter the terms of an insurance policy to be "specifically directed" to insurance, such a factor weighs in favor of that conclusion. *See*

17

*Zuckerman*, 2012 WL 3903780, at *7 ("It is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies." (quoting *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009)). Finally, as the Supreme Court noted in *Miller*, the fact that a regulation may affect entities other than insurance companies does not mean that the law is not "specifically directed" toward insurance. 538 U.S. at 336.

Section 2001.3 also satisfies *Miller*'s second requirement that the state law "substantially affect the risk pooling arrangement between the insurer and the insured." Like the law in *Miller*, Section 2001.3's prohibition on clauses reserving discretion to health carriers to interpret the terms of the contract changes the "scope of permissible bargains between insurers and insureds." By preventing an insurer from having discretion in interpreting terms, Section 2001.3 may give insureds greater leeway to bargain over the substance of those terms. The regulation may also compel insurers to offer different terms up front, since they can no longer dictate their interpretation. Alternatively, "Illinois 'insureds may no longer agree to a discretionary clause in exchange for a more affordable premium.'" *Zuckerman*, 2012 WL 3903780, at *9 (citing *Morrison*, 584 F.3d at 844-45. In the absence of controlling Seventh Circuit authority on this issue, the Court finds persuasive the district court's analysis in *Zuckerman* relying upon the Ninth Circuit, which noted that the Supreme Court has found that similar "scope narrowing" regulations substantially affect the insurer-insured bargain. *Id.* (citing *Rush Prudential*, *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 119 S. Ct. 1380, 143 L. Ed. 2d 462 (1999), and *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985)).

18

Because Section 2001.3 satisfies the *Miller* test for "regulating insurance," it falls within ERISA's saving clause, and is not preempted. Therefore, Section 2001.3 retains its force and strips the plan of its discretion-conferring language. Accordingly, the de novo standard of review applies in this case.

### III.     Scope of Plaintiff's Discovery

Plaintiff seeks discovery in this case. He claims that he is entitled to discovery because (1) if the court applies de novo review, Plaintiff is entitled to the same broad discovery as any other civil action under the Federal Rules of Civil Procedure;[5] (2) even if the arbitrary and capricious standard applies, discovery is necessary because of a conflict of interest by the insurer.

Federal Rule of Civil Procedure 26(b)(1) provides that "unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to

---

[5] In support of his argument for broad discovery like in other civil cases, Plaintiff appeals to *Kappos v. Hyatt*, __ U.S. __, 132 S. Ct. 1690 (2012) for the proposition that "when Congress authorizes a party to institute a 'civil action,' as is the case with actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B), principles of administrative law are inapplicable and the proceedings are to be conducted in accordance with the full panoply of procedures available under the Federal Rules of Procedure." (Pl.'s Mem. of Law 9-10.) Like his invocation of *Amara*, Plaintiff's reliance on *Kappos* in arguing the narrow issue before this Court is similarly imprecise and unhelpful. In *Kappos*, the Supreme Court held that the Federal Rules of Civil Procedure and Evidence–and not "background principles of administrative law"–limit a patent applicant's ability to introduce new evidence in a civil action against the Patent and Trademark Office challenging the denial of the patent application. *See* 132 S. Ct. at 1695-96. As the Seventh Circuit acknowledged in *Krolnik,* however, it is the Federal Rules of Civil Procedure themselves that allow judges in ERISA and non-ERISA cases alike to appropriately limit discovery. *Krolnik*, 570 F.3d at 843 ("Discovery may be curtailed to the extent that the Rules of Civil Procedure allow . . . If the administrative record contains comprehensive medical evidence, then duplicative discovery may be limited to avoid "'undue burden or expense.'" (quoting Fed. R. Civ. P. 26(c)(1)).

any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In ERISA cases in which a court applies

de novo review by making an "independent decision" about a benefit determination, the matter

"should be conducted just like contract litigation, for the plan and any insurance policy are

contracts." *Krolnik*, 570 F.3d at 843. As such, the "court takes evidence (if there is a dispute

about a material fact) and makes an independent decision about how the language of the contract

applies to those facts." *Id.* The Court may either "'limit the evidence to the record before the

plan administrator, or . . . permit the introduction of additional evidence necessary to enable it to

make an informed and independent judgment.'" *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480

F.3d 478, 490 (7th Cir. 2007) (quoting *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir.

1994)). "The district court must sufficiently explain its decision to show [on appeal] that it

considered the relevant factors and exercised its discretion." *Id.* Discovery, however, may not

be warranted in every case. "A court should not automatically admit new evidence whenever it

would help to reach an accurate decision." *Patton*, 480 F.3d at 429. "The record calls for

additional evidence only where the benefits of increased accuracy exceed the costs." *Id.*

Plaintiff alleges that LINA denied him long-term disability benefits in violation of

ERISA because Plaintiff was at that time disabled within the meaning of the policy. (Compl. ¶

13.) Thus, in determining the scope of discovery, the Court must look to the factors relevant to

that question—whether Plaintiff was disabled within the meaning of the policy.

Which factors are relevant to the scope of discovery in de novo review cases is not

entirely clear. While district courts have discretion to permit discovery to explore issues of

disability and entitlement to benefits that may help them in making an independent and informed

judgment, *see Patton*, 480 F.3d at 492 (holding the district court abused its discretion in not

reopening discovery to allow disability claimant to explore basis for doctor's medical opinion); *Krolnik*, 570 F.3d at 843-44 (reversing grant of summary judgment for insurer where district court on de novo review barred discovery of medical evidence relevant to the issue of disability), it is not clear the same holds for issues of motive and conflict of interest. *Compare Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (noting that because the question before the district court on de novo review is not whether the insurer "gave [the plaintiff] a full and fair hearing or undertook a selective review of the evidence" but "whether [the plaintiff] was entitled to the benefits he sought under the plan," "[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant"), *with Blanco v. Prudential Ins. Co.*, 606 F.3d 399, 402 (7th Cir. 2010) (noting the *Patton* proposition that a district court may properly look to conflict of interest in determining discovery, but holding conflict-of-interest discovery foreclosed on other grounds); *Patton*, 480 F.3d at 491 (7th Cir. 2007) (noting in a case where conflict of interest was not at issue that "[c]ourts have suggested, for instance, that the district court may wish to consider . . . whether the plan administrator faced a conflict of interest"). In the absence of Seventh Circuit authority on this issue,[6] district courts have drawn different

---

[6] In *Semien*, the Seventh Circuit addressed the impact of conflict-of-interest allegations to the scope of discovery in the context of deferential, but not de novo review. Specifically, in *Semien*, the Seventh Circuit held that the plaintiff must satisfy the following two-pronged test to obtain discovery on an insurer or administrator's conflict of interest: a claimant must (1) "identify a specific conflict of interest or instance of misconduct"; (2) "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 815 (7th Cir. 2006). Because in *Semien*, the Seventh Circuit reviewed the decision of the district court applying arbitrary and capricious deferential review, the Seventh Circuit did not reach the issue of whether the test it articulated would apply in the de novo review context. *See Semien*, 436 F.3d at 812; *Marantz v. Permanent Medical Grp. Inc. Long Term Disability Plan & Life Ins. Co. of N.Y.*, No. 06 C 3051, 2006 WL 3490340, at *2 (N.D. Ill. Nov. 29, 2006) ("*Semien* makes clear that there has to be a prima facie showing of bias or conflict of interest to justify

conclusions. *Compare Wise v. Life Ins. Co. of N. Am*, No. 11 C 3429, 2012 WL 1203559, at *3 (N.D. Ill. Apr. 10, 2012) (reasoning from *Krolnik* that "[e]vidence regarding conflict of interest, however, would be irrelevant in a *de novo* review case because the Court reviews the matter without regard to the administrator's decision") *and Walsh v. Long Term Disability Coverage for All Emps. Located in the U.S. of DeVry, Inc.*, 601 F. Supp. 2d 1035, 1043 (N.D. Ill. 2009 ) (noting on de novo review the "ultimate question" is whether the claimant is entitled to benefits and that "any procedural violations" occurring in the process are irrelevant)), *with Shepherd v. Life Ins. Co. of N. Am.*, No. 11 C 3846, 2012 WL 379775, at *3 (N.D. Ill. Feb. 3, 2012) (interpreting *Patton* to at a minimum not foreclose consideration of conflict of interest in the scope of discovery inquiry in de novo review).

Yet another complication in the inquiry is the effect of the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), which held that a conflict of interest arising from a plan administrator's "dual role" of both evaluating and paying benefits claims is a factor district courts should look to in determining whether a plan administrator abused its discretion in denying benefits. *Glenn*, 128 S. Ct. at 2346. Though *Glenn* did not address discovery, some district courts have concluded that it bears on the issue, at least in the context of deferential review. *See, e.g.*, *Wise*, 2012 WL 1203559, at *9-10 (noting the disagreement among district courts after *Glenn* about "the prerequisites for allowing discovery on conflict of interests" in the Seventh Circuit); *Barrett*, 2012 WL 3544839, at *3 (acknowledging the split in authority regarding the validity of *Semien* after *Glenn*).

---

going beyond the administrative record, but the court was careful to confine its holding to cases providing only deferential review.")

The Court, however, need not resolve the split in authority to determine the appropriate scope of discovery in this case. Under either approach, Plaintiff has failed to sufficiently allege facts supporting the grant of discovery as to either issues of disability or conflict of interest.

In the pre-trial Initial Joint Status Report, Plaintiff anticipated seeking discovery[7] "regarding the basis of Defendant's decision to terminate his LTD benefits," including the following: (1) deposing Dr. Stuart Gitlow, Dr. Matthew Shatzer, and Dr. Jamie Lewis, the three physicians whom LINA allegedly hired to review Plaintiff's claim for LTD benefits; (2) requesting documents from the vendor that provided the physicians, MES Solutions, in order to determine whether those physicians' opinions "were influenced by economic factors"; (3) deposing the claim representatives involved in Plaintiff's claim for LTD benefits and subsequent appeal and termination thereof; and (4) requesting information regarding LINA's claim procedures with respect to terminating Plaintiff's LTD benefits, as well as financial information regarding the number of claims submitted under the Policy, and approved, denied, or terminated by LINA. (Initial Joint Status Report 4.)

Under the reasoning in *Wise*, Plaintiff is not entitled to discovery because he has failed to allege facts or otherwise explain how any of the above requests go to the issue of assisting the Court in making an "informed decision" as to the issue of disability. With respect to requests #1 and #3 above, Plaintiff does not allege any facts in the Complaint or make arguments in his supporting memoranda suggesting that these depositions will provide any more information

---

[7] Plaintiff also requested "preliminary discovery" to determine whether the Policy was amended. (Initial Joint Status Report 3.) Given Plaintiff put forward the factual issue of amendment in the context of arguing that de novo review should apply, and the Court has concluded so on other grounds, the Court will treat Plaintiff's discovery requests concerning amendment as moot.

bearing on the issue of Plaintiff's disability that is not already available in the record LINA had

before it. With respect to requests #2 and #4, which seek to establish whether there was an

economic or financial motive for the benefits decision, these requests go to any potential conflict

of interest and the motive of the administrator, and are thus irrelevant under *Wise*.

Under the approach of *Shepherd*, discovery would still not be warranted because Plaintiff

has failed to sufficiently allege a conflict of interest. In *Shepherd*, the district court granted

discovery on de novo review where the plaintiff alleged not only an "inherent conflict of

interest" but "claim[ed] to have received information that the insurance company specifically

targeted her employer's group of employees to terminate benefits because there were a number

of company employees on disability at the same time." *Shepherd*, 2012 WL 379775, at *3

(noting an "inherent conflict of interest . . . alone does not tip the scale; nearly all insurance

companies fit that description.") Liberally construed, the only language in Plaintiff's Complaint

regarding conflict of interest is a vague allegation that defendant LINA, as an underwriting

company of CIGNA, has a "history of biased claim adjudications." (Compl. ¶ 17.) The

Complaint does not allege any specific facts pertaining to bias in Plaintiff's case, or connect the

individuals Plaintiff seeks to depose to the vague bias allegation. (Compl. ¶ 17.)

Thus, because additional discovery beyond the record before LINA as claims fiduciary

will not assist the Court in making an informed and independent judgment, the Court denies

Plaintiff's requests for such discovery.

**CONCLUSION**

For the foregoing reasons, the standard of review governing Plaintiff's case will be de novo. The Court denies Plaintiff's requests for discovery beyond the administrative record.

**Date:** November 29, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**